UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

LORI LASKARIS and DANIEL LASKARIS,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

                                                          CASE NO.:

vs.

Fifth Third Bank,
a foreign corporation,

      Defendant.
_____/

## COMPLAINT

Plaintiffs Lori Laskaris and Daniel Laskaris, acting individually and on behalf of all other persons similarly situated, for their Complaint and demand for jury trial state and allege as follows:

## INTRODUCTION AND GENERAL ALLEGATIONS

1. This is an action for damages and injunctive relief from Defendant Fifth Third Bank for charging usurious interest rates in violation of federal law through its Early Access Program.

2. Defendant Fifth Third Bank ("Fifth Third" or "Defendant") is a state-chartered, federally insured bank with branches located throughout the United States, including Florida.

3. Fifth Third offers a program exclusively to its checking account customers known as the Fifth Third Early Access Program ("Early Access Program").

4. The Early Access Program allows customers to open an account with a line of credit to obtain short-term advances based on a customer's regular direct deposits. The Early

1

Access account is directly linked to the customer's checking account, and a customer can make as many online transfers as they would like so long as their advance does not exceed their credit limit less any unpaid balances and fees from prior advances.

5. Fifth Third claims it charges interest with an Annual Percentage Rate ("APR") of 120% for every advance.

6. In the Early Access Program's Terms & Conditions ("Terms & Conditions") and in customers' Early Access Account Statements, Fifth Third discloses the 120% APR. The 120% APR is calculated based on a customer repaying the entire balance of the advance plus the "fee" 30 days after taking the advance. The 120% APR disclosed by Fifth Third to its customers is false and misleading.

7. The true APR is almost always much higher than the 120% APR Fifth Third claims to charge customers for each advance. APR is a financial concept that describes the "time value of money." The interest charged for a loan translates into a much higher APR if the customer pays back the loan and interest in less than 30 days because Fifth Third calculates the APR based on 30 day repayment. In reality, customers usually pay back their advances immediately after receiving them. Fifth Third receives full payment for each advance plus its interest automatically when the customer's next direct deposit posts to their account. This usually occurs within a few days of the customer's Early Access advance. The quoted 120% APR is accurate only if the customer does not repay the loan and the interest until 30 days after taking the advance.

8. More often than not, a customer's next direct deposit occurs within days of the customer taking the advance, resulting in an interest rate well over the 120% APR disclosed by

Fifth Third and well in excess of the permissible interest rate allowed by federal law.

9. At its roots, the Early Access Program is the same as pay-day loan programs usually offered by store front cash advance businesses. These store-front operations earned a reputation for preying on the financially desperate by offering loans at interest rates that shock the conscience. Banks historically refrained from offering these types of loans due to laws preventing banks from charging usury interest rates for loans to customers.

10. For the most part, the Early Access Program mirrors pay-day loan programs with one important exception—Fifth Third has direct access to its customers' checking accounts and the ability to pay itself back immediately with customers' next direct deposit.

11. Fifth Third preys on its customers, who find themselves in desperate need of financial support to bridge a gap between bills due and the next paycheck. The unfortunate self-reinforcing spiral that necessarily follows, and on which Fifth Third's profits necessarily depend, requires the customer to continually take out new advances to fund the customer's payments for Fifth Third's advances and usurious interest rates on past advances.

12. In its disclosures to customers, Fifth Third accurately states that the Early Access Program is an "expensive form of credit that should be used only in emergency situations." However, Fifth Third intentionally misleads its customers as to just how expensive the Early Access Program is and fails to disclose that the interest rate Fifth Third may charge will be in excess of what federal law allows a state-chartered, federally insured bank to receive. In many instances, Fifth Third receives an APR well over 1000% to the detriment of its customers—a fact Fifth Third never discloses as a possibility to its customers.

13. Fifth Third's practice is the exact type of practice the United States Legislature

sought to prevent by enacting the National Banking Act and its related statutes. A bank must adhere to the maximum interest rates allowed by law in the State where it chooses to do business. Fifth Third has chosen to open over one hundred branches in Florida and willfully ignores Florida's laws regulating permissible interest rates for consumer credit like the Early Access Program.

## PARTIES

14. Plaintiffs Lori Laskaris and Daniel Laskaris are residents of Hillsborough County, Florida. Plaintiffs have been Fifth Third checking account customers since 2009.

15. On January 28, 2010, Plaintiffs opened a Fifth Third Early Access account. The account remains open and Plaintiffs continue to use the account for advances on their direct deposits.

16. Defendant Fifth Third Bank is a state-chartered, federally insured bank with over 100 branch locations in Florida.

## JURISDICTION AND VENUE

17. Substantial acts giving rise to the causes of action asserted herein occurred in this State and within this venue.

18. Jurisdiction is proper in this Court because class representatives Lori Laskaris and Daniel Laskaris reside in Tampa, Florida, and all proposed class members maintain Early Access accounts in Florida or opened their Early Access account in Florida.

19. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Plaintiffs are citizens of the State of Florida. Other class members are citizens of Florida or opened their Early Access accounts in Florida.

20. This Court has subject matter jurisdiction over Plaintiffs' claims arising under 12 U.S.C. § 1831d pursuant to 28 U.S.C. § 1331.

21. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because Plaintiffs' state law claims arise out of the same transaction or occurrence as their claims under 12 U.S.C. § 1831d—namely, Fifth Third charging excessive interest in connection with its Early Access program.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this District.

## FACTS

**a.  Common Factual Allegations as to the Proposed Class**

23. Fifth Third offers the Early Access Program in Ohio, Kentucky, Michigan, Illinois, Indiana, Tennessee, Missouri, and Florida.  Customers can open an Early Access account by either visiting a branch location in the participating states or opening an account through Fifth Third's internet banking.

24. A customer qualifies for an Early Access account if they: (1) have a Fifth Third checking account that has been open for at least 90 days; (2) are in good standing with the bank; and (3) have received at least one direct deposit of $100 or more during at least two of the prior four months and one such direct deposit within the 35 days prior to opening the Early Access account.

25. Customers may take advances equal to half of their combined monthly direct deposits into their checking account.  However, the maximum credit limit is $750.00 if the customer's total monthly direct deposits do not exceed $2,000, and $1,000 if the customer's total

monthly direct deposits do exceed $2,000.

26. Once an account is open, customers can view all transfers, fees, and payments related to their Early Access account on-line. From there, customers are able to immediately transfer advances from their Early Access account directly into their checking account.

27. By opening an Early Access account, each customer agrees to Fifth Third's Terms & Conditions. The Terms and Conditions are attached to this Complaint as Exhibit "A." The Terms & Conditions explain the finance charges under the Early Access program as well as the repayment procedures required by Fifth Third.

28. According to the Terms & Conditions, Fifth Third charges what it refers to as a 10% "transaction fee" for every dollar borrowed by a customer. The "fee" is in actuality an interest rate, which Fifth Third equates to an APR of 120% for every advance. The 120% APR is specifically identified in on-line customers' account statements as a "Fifth Third Early Access Finance Charge" and is also disclosed in the Terms & Conditions.

29. On the date a customer takes an advance, Fifth Third enters the withdrawal along with the applicable finance charge on the Early Access account statement. On the date the customer receives their next direct deposit, Fifth Third withdraws the advance plus the entire finance charge regardless of the time that has passed since the customer took the advance. It is often the case that the customer's next direct deposit occurs within a few days of the customer taking the advance, resulting in a finance charge with an APR well in excess of 120% and well in excess of what the customers agreed to pay, and Fifth Third agreed to charge, in exchange for the advance.

30. Nowhere in Fifth Third's Early Access Terms & Conditions or other documents

does it disclose that when a customer receives their next direct deposit in less than 30 days from the last cash advance the resulting APR will be greater than 120%. However, Fifth Third has access to their clients direct deposit history and is fully aware that the higher interest rate is likely for its customers.

31.     Fifth Third willfully and knowingly misleads customers through Early Access documents and customers' on-line Early Access account summaries into believing every advance taken will have an APR of 120%. In actuality, Fifth Third receives a much higher APR on the loans whenever a customer receives a direct deposit and Fifth Third repays its loan plus interest less than 30 days after the date it makes the loan.

       **b.**     **Facts as to Plaintiffs Lori Laskaris and Daniel Laskaris**

32.     In 2009, Plaintiffs opened a joint Fifth Third Free Checking Account at Fifth Third's Wiregrass branch located in Pasco County, Florida.

33.     In January of 2010, Plaintiffs received a call from the Fifth Third employee who opened their checking account recommending that they consider opening an Early Access account. Based on their direct deposit history, Plaintiffs were approved for a $1,000 line of credit and opened an Early Access account on January 28, 2010.

34.     In order to open the account, Plaintiffs had to agree to the Terms and Conditions, which disclosed a finance charge equal to a 120% APR.

35.     Typically, Plaintiffs have received four direct deposits per month since opening their account. At no point since opening the account has 30 days passed between one Early Access advance and the next direct deposit.

36.     Once the account was open, Plaintiffs were able to access their account on-line

and make transfers to their checking account. Plaintiffs' on-line account summary incorrectly notes the 120% Annual Percentage Rate for all advances.

37.    Plaintiffs have continued to regularly use their Early Access account for nearly three years. From April 1, 2011 through December 1, 2012 Plaintiffs were charged at least $459.00 in finance charges.[1] Each and every one of Plaintiffs advances and finance charges between April 1, 2011 and December 1, 2012 were paid back in full to Fifth Third in less than 30 days resulting in an APR well in excess of 120%. Below are examples of specific instances where Fifth Third charged Plaintiffs an APR greater than 120%:

- On April 11, 2011, Plaintiffs transferred $100.00 from their Early Access account. Four days later, Plaintiffs received a direct deposit and Fifth Third debited $110.00 from their checking account. This reflects an APR of approximately 912%.

- On May 2, 2011, Plaintiffs transferred $100.00 from their Early Access account. One day later, Plaintiffs received a direct deposit and Fifth Third debited $110.00 from their checking account. This reflects and APR of approximately 3,650.

- On July 1, 2011, Plaintiffs transferred $300.00 from their Early Access account. Seven days later, Plaintiffs received a direct deposit and Fifth Third debited $330.00 from their checking account.[2] This reflects and APR of approximately 521%.

---

[1] Plaintiffs were unable to retrieve any account activity prior to April 1, 2011 for their Early Access Account. However, Plaintiffs believe there are dozens of additional advances and finance charges dating back to the date they opened the account.

[2] The total amount Fifth Third debited was $605.00 which also included an additional $250.00 in advances taken by Plaintiffs on July 5, 2011 (three days earlier) plus $25 in finance charges. The APR for the $250.00 advance was approximately 1,240%.

- On October 21, 2011, Plaintiffs transferred $100.00 from their Early Access account. Seven days later, Plaintiffs received a direct deposit and Fifth Third debited $110.00 from their checking account. This reflects and APR of approximately 521%.

- On January 30, 2012, Plaintiffs transferred $50.00 from their Early Access account. Two days later, Plaintiffs received a direct deposit and Fifth Third debited $55.00 from their checking account. This reflects an APR of approximately 1,825%.

- On September 24, 2012, Plaintiffs transferred $120.00 from their Early Access account. Four days later, Plaintiffs received a direct deposit and Fifth Third debited $132.00 from their checking account. This reflects and APR of approximately 912%.

- On October 22, 2012, Plaintiffs transferred $200.00 from their Early Access account. Four days later, Plaintiffs received a direct deposit and Fifth Third debited $220.00 from their checking account. This reflects and APR of approximately 912%.

38. Given the frequency of direct deposits into Plaintiffs checking account, of which Fifth Third was aware, every advance plus interest taken out of their Early Access account has been paid back by Plaintiffs in less than 30 days.

39. As a result of Fifth Third's practices, Plaintiffs have been charged usurious interest rates for every advance they have taken since opening their Early Access account.

## CLASS ALLEGATIONS

**a.    Class Definition**

40. Plaintiffs bring this action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated. Plaintiffs seek to certify a class of all Fifth Third customers who used the Early Access Program and repaid

their loan within 30 days of taking an advance from their Early Access account at any time in the five years preceding the filing of this Complaint.

41.	Excluded from these classes are Defendant, its affiliates, subsidiaries, agents, board members, directors, officers, and employees, and Plaintiffs' counsel.

42.	Plaintiffs reserve the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

43.	Defendant subjected Plaintiffs and Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.  The conduct described above is the Defendant's standard and undisputed business practice.

**b.	Numerosity**

44.	The individual class members are so numerous that joinder of all members is impracticable.  The Defendant has dozens of branches in the state of Florida and it is believed thousands of customers have opened Early Access accounts.  The individual class members are ascertainable as the names and addresses of all class members can be identified in the business records maintained by the Defendant.  Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

**c.	Commonality**

45.	There are questions of law and fact that are common to the Plaintiffs' and Class Members' claims.  These common questions predominate over any question that goes particularly to any individual member of the Class.  Among such common questions of law and fact are the following:

    1.	Whether Fifth Third charged usury interest rates to customers using the Early Access Program in violation of federal law.

      2.      Whether Fifth Third misrepresented that the APR for Early Access advances was 120%.

      3.      Whether Fifth Third knowingly charged an interest rate with an APR in excess of 120% for any loans repaid in less than 30 days.

**d.    Typicality**

46.    Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of the Class because of the similarity, uniformity, and common purpose of the unlawful conduct of Defendants. Each class member has sustained and will continue to sustain damages in the same manner as Plaintiffs as a result of Defendant's wrongful conduct.

**e.    Adequacy of Representation**

47.    Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs are committed to vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiffs and unnamed class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

**f.    Requirements of Fed. R. Civ. P. 23(b)(3)**

48.    The questions of law or fact common to Plaintiffs' and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiffs and the unnamed Class Members are based on the Early Access Program initiated by Defendant charging usury interest rates to its customers in violation of federal law.

49.    Common issues predominate when, as here, liability can be determined on a class wide basis, even when there will be some individualized damages and determinations.

50. As a result, when determining whether common questions predominate, courts focus on the liability issue, and, if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**g.  Superiority**

51. A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

1. Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across Florida and potentially outside of Florida;

2. Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake. As a result, individual class members have no interest in prosecuting and controlling separate actions, yet if the action is not prosecuted, Defendant will continue its wrongful actions;

3. There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

4. The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

5. Individual suits would not be cost effective or economically maintainable as individual actions; and

6. The action is manageable as a class action.

**h.  Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

52. Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

53. Defendant has acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with

12

respect to the Class as a whole.

## COUNT I
## USURY

54.  Plaintiffs reallege the preceding paragraphs of this Complaint.

55.  12 U.S.C. § 1831d prohibits state-charted federally insured banks, such as Fifth Third, from charging an interest rate greater than the rate allowed by the laws of the State where the bank is located.

56.  Defendant is located in Florida with well over 100 branches throughout the State.

57.  Pursuant to Florida Statutes § 687.03(1), a bank may not charge an APR on loans or lines of credit greater than 18%.

58.  Since the inception of the Early Access Program, Fifth Third has knowingly charged an APR on advances taken by customers from their Early Access account well in excess of 18% in violation of 12 U.S.C. § 1831d. In fact, Defendant has knowingly charged finance charges with APRs well in excess of the 120% it discloses to the proposed class members.

59.  Specifically, Defendant knew that all Fifth Third customers who used the Early Access Program and repaid their loan in less than 30 days of taking an advance from their Early Access account would be charged an APR greater than 120%.

60.  Pursuant to 12 U.S.C. § 1831d, Plaintiffs and all other similarly situated individuals are entitled an amount equal to twice the amount of interest paid for the two years preceding the filing of this Complaint.

## COUNT II
## BREACH OF CONTRACT

61.  Plaintiffs reallege the preceding paragraphs of this Complaint.

62. Fifth Third's Terms and Conditions for the Early Access Program detail the customer's agreement and contract for taking advances from their Early Access account. Each customer, including Plaintiffs and all others similarly situated, must agree to the Terms & Conditions in order to open an Early Access account.

63. Fifth Third agreed in its Terms and Conditions that customers of the Early Access Program would not be charged an APR greater than 120% for each advance. Fifth Third also represented a maximum APR of 120% in its Frequently Asked Questions and other documents, including on-line account summaries for its customers. A copy of the Frequently Asked Questions is attached as Exhibit "B."

64. Fifth Third breached the Early Access Program contract by charging customers who used the Early Access Program and repaid their loan in less than 30 days of taking an advance from their Early Access account a finance charge with an APR greater than 120%.

65. As a result of Fifth Third's breach of contract, Plaintiffs, and all others similarly situated, are entitled to compensatory damages in an amount to be determined after a trial by jury.

## DAMAGES AND INJUNCTIVE RELIEF

66. Defendant should pay damages to the class in an amount to be determined after a trial by jury, but in any event, in excess of five million dollars.

67. Defendant should be enjoined from charging interest rates for Early Access advances in excess of rates allowed by federal law.

## **DEMAND FOR JURY TRIAL**

68.     Plaintiffs, on behalf of themselves and all others similarly situated, demand trial by jury on all issues so triable.

WHEREFORE, Plaintiffs pray that this Court certify this case as a class action and allow Plaintiffs to pursue claims and relief described hereinabove on behalf of themselves and all others similarly situated; that the Court certify the class identified above; that Plaintiffs be awarded the maximum amount of damages allowed by applicable law; pre-judgment interest; for a trial by jury on all issues so triable; for attorneys' fees, costs, and all other appropriate relief.

Dated this 12th day of February, 2013.

By: /s/ Kevin McLaughlin
Kevin McLaughlin, Esquire
Florida Bar Number 85928
Jason Whittemore, Esquire
Florida Bar Number 0037256
WAGNER, VAUGHAN & McLAUGHLIN
601 Bayshore Blvd, Suite 910
Tampa, FL 33606
Telephone No.: (813) 225-4000
Fax:    (813) 225-4010
Kevin@WagnerLaw.com
Jason@WagnerLaw.com

Steven A. Owings, Esquire
*Pro Hac Vice*
Alex Owings, Esquire
Florida Bar Number 0093797
OWINGS LAW FIRM
1400 Brookwood Drive
Little Rock, AR 72202
Telephone No.: (501) 661-9999
Fax:    (501) 661-8393
sowings@owingslawfirm.com
apowings@owingslawfirm.com

T. Brent Walker, Esquire
*Pro Hac Vice*
WALKER LAW, PLC
Post Office Box 287
Cabot, AR 72023
Telephone No.: (501) 605-8595
Fax:     (888) 571-0319
bwalker@walkerlawplc.com
